AMASA WAKEFIELD *versus* DAVID W. CAMPBELL & *al.*

If an administrator, under a license from Court to sell real estate for the payment of debts, sells and conveys land for an entire sum of money for the whole tract sold, exceeding in amount the sum he was authorized to raise, such sale is void.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

This was a writ of entry wherein was demanded a tract of land in Cherryfield, containing about two acres.   The demandant introduced a deed to himself from Joel Farnsworth, ad-

ministrator of the estate of Benjamin Small, deceased, dated Sept. 15, 1836, less than five years before the commencement of this suit. To show the authority of Farnsworth to make the conveyance, the demandant introduced copies from the probate office of the county, from which it appeared, that Farnsworth was the administrator of the estate of Small, and in that capacity was duly licensed at the probate court holden August 2, 1836, and empowered to convey so much of the real estate of said deceased as would raise the sum of *one hundred and eighty-five dollars*, for the payment of debts, charges of administration, and incidental charges. After legal notice given, on September 15, 1836, the administrator sold at public vendue to the demandant, he being the highest bidder therefor, the demanded premises for the sum of *two hundred dollars*, and on the same day made and delivered to the demandant a deed thereof in consideration of the payment of that sum.

Upon this evidence, the counsel for the tenant contended, that as the administrator had but a bare power or license to sell so much real estate as would produce the sum of one hundred and eighty-five dollars, and had sold as much as produced the sum of two hundred dollars, he had exceeded his authority, and that his sale and deed were therefore void. The Judge ruled, that the sale was void, and that no title passed thereby, and a nonsuit was entered.

*C. Burbank*, for the demandant, said that the deed was not void, and at most but voidable by the heirs. The tenant, having no title, and standing as a mere trespasser, cannot dispute the legality of the proceedings, and cannot question our title. The objection, if any exists, can only be taken by the heirs, or those claiming under them.

*Hobbs*, for the tenant, said but a single point was presented, whether the sale by an administrator of a tract of land for two hundred dollars under a license to sell to the amount of one hundred and eighty-five dollars was legal. He considered it settled, that such sale was illegal and void. *Adams* v. *Morrison*, 4 N. H. R. 166; *Litchfield* v. *Cudworth*, 15 Pick. 23; Com. Dig. Power, C. (6).

The opinion of the Court was by

EMERY J. — The plaintiff insists, that the defendants, having no title, but coming in as trespassers, they cannot be allowed to dispute the title of the plaintiff in this case. That as the administrator acted in good faith, the deed is not void, because the land was sold for a greater sum than he was licensed to raise.

The defendants rely on the case of *Adams* v. *Morrison*, 4 N. H. R. 167 ; *Litchfield* v. *Cudworth*, 15 Pick. 23 ; Com. Dig. Power, C. 6, as decisive of the case in their favor.

The case in New Hampshire was one where a posthumous child was demanding his portion of his father's estate. And the doctrine of the Court was, that if one, under license to raise a particular sum, sells and conveys an entire tract of land for an entire sum of money, exceeding in amount the sum authorized by the license to be raised, the whole sale is void, because the act is entire and there is no way to ascertain what portion of the land he had authority to convey, and what not. When separate tracts are sold for distinct prices, the law is otherwise. One may be legal and the other not so. And the following cases are cited by the Court. *Jenkins* v. *Keymis*, 1 Lev. 150 ; *Batty* v. *Carswell*, 2 Johns. 48 ; *Whitlock's* case 8 Co. 138.

The case, *Litchfield* v. *Cudworth*, 15 Pick. 23, was a claim of land by an execution creditor of an heir, by a levy in part, and countenances the idea that "although trustees, who have power to sell, can never by direct or indirect means become purchasers of the trust property, yet these principles do not render the sale absolutely void." It is an abuse of authority which may be taken advantage of by any one whose interest is affected, that is, *cestui que* trusts and all for whom the agent acted have an option to avoid the sale and retain the property, or to confirm the sale and receive the consideration, as may be for their interest. And the Court says an administrator without license from a competent Court, has no power to sell the real estate of his intestate. He is bound strictly to execute "the authority given him, and a deed by him not given in pur-

suance of his authority would have no more operation to pass the estate of his intestate, than a deed made by a stranger. If under an authority to sell a part, he sells the whole, the act is unauthorized and void.    He was licensed to sell to the amount of $640, and he sold the whole estate for $953,33.

It must be wholly valid or wholly invalid, How can it be apportioned?    Who shall determine what part, and how much the purchaser, and which, and how much the heir shall hold? And further, that a conveyance by one heir, and commence-ment of suit by his assignee for the land, is a sufficient avoid-ance of the administrator's sale."

The case of *Adams* v. *Morrison*, 4 N. H. R. 167, was cited by the demandant's counsel but no allusion is made to that case by the Justice in Massachusetts who delivered the opinion of the Court.

The questions by him propounded seem to be made in the conviction, that it is impossible that they should be answered, except in a way to sustain the conclusion to which the Judge arrived.

That there is a difficulty attending a different view, is readily admitted.    Yet it would seem to be very essential to the speedy settlement of estates that as far as practicable, in con-formity with rules of law, it should be a primary object of the Courts to sustain the doings of administrators.    It is a princi-ple in equity to consider that the execution of a power in a way exceeding the authority, is void only for the excess, and good for the residue, if the bounds can be clearly ascertained. And if there be cases in which the bounds may fairly be ascer-tained, as it is granted there may, if two pieces of land be sold for distinct prices; may it not also be discovered when the sale is made at so much per acre?    And would there be any insuperable difficulty in considering the heir as interested in common with the purchaser in so many acres as the price may shew were unwarrantably conveyed?    If there be any case then in which injustice may be prevented, by separating the good from the bad, in case of a sale for too great an amount, is it not going too far at once to denounce the whole

as void merely because the sale is made for a greater sum than was needed ?

May not cases occur where a fair opportunity for a sale may exist, and very near or quite the full value is offered, which may exceed the amount for which the license is given, a few dollars, as in the present case, and yet if the bargain be not then completed, the like advantageous proposal may not happen again ?    A new license may be obtained, perhaps, to sell the whole.    Additional expense must then be incurred, and possibly, no so good offer be had, and an essential injury is done to all concerned.

May it not deserve consideration, whether, in contemplating the whole operation of our probate system, as to the administration of estates, and our statutes of limitation, a more liberal construction as to the execution of the powers of executors and administrators be not strongly urged upon Courts ?

Though an administrator has no direct interest in the soil as administrator, yet at present he is bound to inventory real estate, has a right to the rents and profits, and if licensed to sell, by the bond which he gives, he is placed in such a predicament as to be holden for any excess which he may obtain, if the heirs see fit to call him to account.

The truth is, much of the doctrine of strictness as to the execution of powers, is the result of construction made upon the peculiarities of English conveyances, which are devised to uphold family settlements, raise jointures, and make provision for children.    It is professed, that they would guard against perpetuities; yet their practice was to give powers for leasing for years or for lives, and trammeling the subject with nice qualifications and with powers of revocation.

Powers were originally in their nature equitable, but are by the statute of uses transferred to common law.    2 Burr. 1147. There are, there, two kinds of settlement; one by which the issue of the person to whom the first limitation is made, shall certainly take, by giving the first taker only an estate for life. The other, by creating an estate tail in the first instance. But then, Lord Mansfield says, " that is a trick in law, by

which, when the issue arrive at twenty-one, the entail may be barred ; and there is a trick against that, to make a strict settlement." And he asks, " what is the use of powers? it implies a strict settlement with power to make jointures, leases, and raise portions." *Doe ex dem. Duke of Devonshire & Duke and Duchess of Portland* v. *Lord George Cavendish,* 4 D. & E. 741, in note.

It is not necessary for us to resort to tricks for the purpose of effecting the settlement of estates. But we are not to misapply, arbitrarily, maxims which the changes of circumstances and law have made less appropriate to the present subject than formerly.

It is a sort of axiom, that naked powers, unaccompanied by any interest, are to be construed strictly. And the case cited, *Batty* v. *Carswell,* 2 Johns. 48, is an instance. Where A authorized B to sign his name to a certain note for a certain sum, payable in six months, and B put A's name to a note for that sum payable in 60 days, A would not be liable.

There are powers given to donees of particular estates, to be *construed strictly* in favor of remainder men, and yet liberally enough to make provision for a posthumous child, though the terms were, " who should be living at his death." *Beale* v. *Beale,* 1 Peere Wms. 244. And an *eldest* daughter, though first born, when there is a son, has often been ruled to be as a younger child.

There are powers reserved by the donor for the benefit of himself, or of his heir, who would have been entitled to the fee, if it had not been limited by the donor's act.

These have received a liberal construction.

No power can be so framed as to protect an appointment under it from payment of the debts of the person appointing. 2 Ves. 640.

It may not be amiss to observe, that the two leading cases cited in the case, *Adams* v. *Morrison,* 4 N. H. R. 167, *Whitlock's* case, 8 Co. 138, as there stated, and the case of *Jenkins* v. *Keymis,* are both cases arising on the construction of powers such, as have before been spoken of.

Lord Mansfield, in *Zouch ex dem. Woolston* v. *Woolston & al.* 2 Burr. 1136, asserted, that whatever is an equitable, ought to be deemed a legal execution of a power. He further said, that in some of the early cases, they reasoned in courts of law, upon these equitable powers from notions applicable to naked authorities, unconnected with any interest, or to mere legal powers introduced by other statutes, instead of adopting the liberality of courts of equity; and considering these powers brought into the common law by the statute of uses, merely as a mode of ownership or property. And Justice Wilmot said that "courts of law ought to concur in supporting the execution of these powers, and ought not to listen to nice distinctions that savor of the sophistry of the schools; but to be guided by true good sense, and manly reason."

The State of New York has legislated extensively on this intricate subject; Maine has not.

The principle on which our system proceeds is, that real estate shall be a fund for the payment of debts, if necessary, that the administrator may sell on license. If he sell, and in the performance of his duty, commit errors, which might be fatal, if taken advantage of in season, yet if the heirs omit to seek their redress in five years, by our statute, c. 52, § 12, they are barred. *Beal & al.* v. *Nason*, 14 Maine R. 344. And this limitation is made for the purpose of expediting the settlement of estates and quieting purchasers. Whether the persons subjected to injury from the misconduct of the administrator have redress on his bond, they can ascertain, if they choose, by action. And in New York, it has been decided that strangers to the title are not to take advantage of this objection. *Jackson* v. *Dalfsen*, 5 Johns. 43. In the present case, five years have not elapsed. The heirs may never claim. Creditors could not, if they have received their dues from the administrator.

Notwithstanding these suggestions and views, which have arisen in examining the decisions to which our attention has been directed, yet considering that the matter under discussion is a real action, in which the plaintiff is to prevail by the

strength of his own title, if he fail to exhibit a *prima facie* good title in his opening, it is his misfortune, and he must bear the consequences of his failure. Our courts have jealously watched the proceedings of administrators on sales of real estate under license. They have been holden to a strict compliance with the requisitions of law in such cases. And if the sale be made of a greater quantity than authorized by the license, when it is ascertained *only by the price*, and that is *greater* than the amount for which the license is given, *the sale* has been *deemed invalid*. We do not feel at liberty to overrule the decisions. We cannot but perceive the great difficulty which might arise from countenancing a departure from the rule so often enforced. By the plaintiff's own showing, the sale was for too large a sum not warranted by the license. And at the time the nonsuit was ordered, it was so ordered in conformity with the law.

> *The exceptions must therefore be overruled.*